<u>UNITED STATES DISTRICT COURT</u>
<u>DISTRICT OF NEW JERSEY</u>

| | |
|---|---|
| PIERRE FONTAINE, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>ELECTRIC LAST MILE SOLUTIONS, INC. F/K/A FORUM MERGER III CORP., JAMES TAYLOR, JASON LUO, DAVID BORIS, MARSHALL KIEV, ALBERT LI, and ROBERT SONG,<br><br>        Defendants. | **Case No:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Pierre Fontaine ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding Electric Last Mile Solutions, Inc. and its predecessor company Forum Merger III

1

Corp. ("ELMS," "FIIU," or the "Company"), and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons or entities who purchased or otherwise acquired ELMS and/or FIIU securities, between November 12, 2020 and February 1, 2022, inclusive (the "Class Period").  Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased ELMS securities during the Class Period and was economically damaged thereby.

7.     ELMS purports to be a pure-play commercial electric vehicle company.  On June 25, 2021, Electric Last Mile, Inc. and Forum Merger III Corp., a special purpose acquisition company ("SPAC") or blank check company, closed the merger (the "Merger") which resulted in ELMS.

8.     The Company is incorporated in Delaware and its head office is located at 1055 W. Square Lake Road, Troy, MI, 48098. ELMS's common stock trades on the NASDAQ under the ticker symbol "ELMS" and ELMS's warrants trade on the NASDAQ under the ticker symbol "ELMSW."  Prior to the Merger, the Company's securities traded on the NASDAQ under the ticker symbols "FIII," "FIIIU," and "FIIIW."

9. Defendant James Taylor ("Taylor") served as the Company's Chief Executive Officer ("CEO") following the Merger until February 1, 2022. Prior to the Merger, Defendant Taylor was Electric Last Mile, Inc.'s co-founder and CEO.

10. Defendant Jason Luo ("Luo") served as the Company's Executive Chairman following the Merger until February 1, 2022. Prior to the Merger, Defendant Luo was Electric Last Mile, Inc.'s co-founder and Executive Chairman.

11. Defendant David Boris ("Boris") served as the Company's Co-Chief Executive Officer ("Co-CEO"), Chief Financial Officer ("CFO"), and as a Director at all relevant times prior to the Merger and continues to serve as a Director of ELMS.

12. Defendant Marshall Kiev ("Kiev") served as the Company's Co-CEO at all relevant times prior to the Merger.

13. Defendant Albert Li ("Li") served as the Company's CFO from June 2021 through November 2021.

14. Defendant Robert Song ("Song") has served as the Company's CFO and Treasurer since November 2021.

15. Defendants Taylor, Luo, Boris, Kiev, Li, and Song are collectively referred to herein as the "Individual Defendants."

16. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

4

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

17.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

18.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

19.     The Company and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

20.     On November 12, 2020, the first day of the Class Period, the Company filed with the SEC its quarterly report for the period ended September 30, 2020 (the "3Q20 Report") signed by Defendants Kiev and Boris.  Attached to the 3Q20 Report were certifications pursuant to SOX signed by Defendants Kiev and Boris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

21.     The 3Q20 Report contained the following financial statements:

FORUM MERGER III CORPORATION
CONDENSED BALANCE SHEETS

| | | September 30, 2020 (unaudited) | | December 31, 2019 (audited) |
|---|---|---|---|---|
| **ASSETS** | | | | |
| Current assets | | | | |
| Cash | $ | 1,814,904 | $ | 19,810 |
| Prepaid expenses | | 191,275 | | — |
| Total Current Assets | | 2,006,179 | | 19,810 |
| | | | | |
| Deferred offering costs | | — | | 62,726 |
| Cash and marketable securities held in Trust Account | | 250,022,847 | | — |
| **Total Assets** | $ | 252,029,026 | $ | 82,536 |
| | | | | |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | |
| Current liabilities | | | | |
| Accrued expenses | $ | 37,955 | $ | 1,966 |
| Accrued offering costs | | — | | 57,726 |
| Due to Sponsor | | 94,110 | | — |
| Total Current Liabilities | | 132,065 | | 59,692 |
| | | | | |
| Deferred underwriting fee payable | | 8,750,000 | | — |
| **Total Liabilities** | | 8,882,065 | | — |
| | | | | |
| **Commitments and Contingencies** | | | | |
| | | | | |
| Class A common stock subject to possible redemption, 23,814,696 and none shares at redemption value as of September 30, 2020 and December 31, 2019, respectively | | 238,146,960 | | — |
| | | | | |
| Stockholders' Equity | | | | |
| Preferred stock, $0.0001 par value; 1,000,000 shares authorized; none issued and outstanding | | — | | — |
| Class A common stock, $0.0001 par value; 100,000,000 shares authorized; 1,926,554 and none issued and outstanding (excluding 23,814,696 and none shares subject to possible redemption) as of September 30, 2020 and December 31, 2019, respectively | | 193 | | — |
| Class B common stock, $0.0001 par value; 10,000,000 shares authorized; 7,187,500 shares issued and outstanding as of September 30, 2020 and December 31, 2019 [1] | | 719 | | 719 |
| Additional paid-in capital | | 5,104,380 | | 24,281 |
| Accumulated deficit | | (105,291) | | (2,156) |
| Total Stockholders' Equity | | 5,000,001 | | 22,844 |
| Total Liabilities and Stockholders' Equity | $ | 252,029,026 | $ | 82,536 |

22.    On March 31, 2021, the Company filed with the SEC its annual report for the year ended December 31, 2020 (the "2020 Annual Report") signed by Defendant Boris. Attached to the 2020 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Kiev and Boris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

23.    The 2020 Annual Report contained the following financial statements:

**FORUM MERGER III CORPORATION**
**CONSOLIDATED BALANCE SHEETS**

|  | December 31 | |
|---|---|---|
|  | 2020 | 2019 |
| **ASSETS** | | |
| Current assets | | |
| Cash | $ 1,555,497 | $ 19,810 |
| Prepaid expenses | 157,486 | — |
| Total Current Assets | 1,712,983 | 19,810 |
| Deferred offering costs | — | 62,726 |
| Cash and marketable securities held in Trust Account | 250,066,590 | — |
| **TOTAL ASSETS** | $ 251,779,573 | $ 82,536 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities | | |
| Accrued expenses | $ 3,329,929 | $ 1,966 |
| Accrued offering costs | — | 57,726 |
| Total Current Liabilities | 3,329,929 | 59,692 |
| Deferred underwriting fee payable | 8,750,000 | — |
| **TOTAL LIABILITIES** | 12,079,929 | 59,692 |
| **Commitments and Contingencies** | | |
| Class A common stock subject to possible redemption, 23,469,964 and none shares at redemption value as of December 31, 2020 | 234,699,640 | — |
| **Stockholders' Equity** | | |
| Preferred stock, $0.0001 par value; 1,000,000 shares authorized, none issued and outstanding | — | — |
| Class A common stock, $0.0001 par value; 100,000,000 shares authorized; 2,271,286 and none issued and outstanding (excluding 23,469,964 and none shares subject to possible redemption) as of December 31, 2020 and 2019, respectively | 227 | — |
| Class B common stock, $0.0001 par value; 10,000,000 shares authorized; 6,250,000 and 7,187,500 shares issued and outstanding as of December 31, 2020 and 2019, respectively [(1)] | 625 | 719 |
| Additional paid-in capital | 8,551,740 | 24,281 |
| Accumulated deficit | (3,552,588) | (2,156) |
| **Total Stockholders' Equity** | 5,000,004 | 22,844 |
| **Total Liabilities and Stockholders' Equity** | $ 251,779,573 | $ 82,536 |

(1)  At December 31, 2019, the shares issued and outstanding include 937,500 shares of Class B common stock forfeited on October 5, 2020 as a result of the expiration of the underwriter's option to exercise their over-allotment (see Note 5).

**FORUM MERGER III CORPORATION**
**CONSOLIDATED STATEMENTS OF OPERATIONS**

|  | Year Ended December 31, 2020 | For the Period from June 25, 2019 (Inception) Through December 31, 2019 |
|---|---|---|
| Formation and operational costs | $ 3,617,022 | $ 2,156 |
| **Loss from operations** | (3,617,022) | (2,156) |
| Other income: | | |
| Interest earned on marketable securities held in Trust Account | 66,590 | — |
| **Net loss** | $ (3,550,432) | $ (2,156) |
| Weighted average shares outstanding of Class A redeemable common stock | 25,000,000 | — |
| **Basic and diluted net income per share, Class A** | $ 0.00 | $ 0.00 |
| Weighted average shares outstanding of Class A and Class B non-redeemable common stock [(1)] | 6,518,068 | 6,250,000 |
| **Basic and diluted net loss per share, Class A and Class B non-redeemable common stock** | $ (0.54) | $ (0.00) |

(1)  At December 31, 2019, the weighted average shares outstanding include up to 937,500 shares of Class B common stock forfeited on October 5, 2020 as a result of the expiration of the underwriter's option to exercise their over-allotment (see Note 5).

**FORUM MERGER III CORPORATION**
**CONSOLIDATED STATEMENTS OF CHANGES IN STOCKHOLDERS' EQUITY**

| | Class A Common Stock | | Class B Common Stock | | Additional Paid-in Capital | Stock Subscription Receivable from Stockholder | Accumulated Deficit | Total Stockholders' Equity |
|---|---|---|---|---|---|---|---|---|
| | Shares | Amount | Shares | Amount | | | | |
| Balance – June 25, 2019 | — | $ — | — | $ — | $ — | $ — | — | $ — |
| Issuance of Class B common stock to Sponsor [1] | — | — | 7,187,500 | 719 | 24,281 | (25,000) | — | — |
| Collection of stock subscription receivable from stockholder | — | — | — | — | — | 25,000 | — | 25,000 |
| Net loss | — | — | — | — | — | — | (2,156) | (2,156) |
| Balance – December 31, 2019 | — | — | 7,187,500 | 719 | 24,281 | — | (2,156) | 22,844 |
| Sale of 25,000,000 Units, net of underwriting discounts | 25,000,000 | 2,500 | — | — | 235,812,232 | — | — | 235,814,732 |
| Sale of 741,250 Private Placement Units | 741,250 | 74 | — | — | 7,412,426 | — | — | 7,412,500 |
| Forfeiture of Founder Shares | — | — | (937,500) | (94) | 94 | — | — | — |
| Class A common stock subject to possible redemption | (23,469,964) | (2,347) | — | — | (234,697,293) | — | — | (234,699,640) |
| Net loss | — | — | — | — | — | — | (3,550,432) | (3,550,432) |
| Balance – December 31, 2020 | 2,271,286 | $ 227 | 6,250,000 | $ 625 | $ 8,551,740 | $ — | $ (3,552,588) | $ 5,000,004 |

(1) Includes 937,500 shares of Class B common stock forfeited on October 5, 2020 as a result of the expiration of the underwriter's option to exercise their over-allotment (see Note 5).

24.    On May 7, 2021, the Company filed with the SEC an amendment to its 2020 Annual Report on Form 10-K/A (the "2020 Amendment") signed by Defendant Boris.  Attached to the 2020 Amendment were certifications pursuant to SOX signed by Defendants Kiev and Boris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

25.    The 2020 Amendment contained the following financial statements:

FORUM MERGER III CORPORATION
CONSOLIDATED BALANCE SHEETS

| | December 31 | |
|---|---|---|
| | 2020 | 2019 |
| | (As Restated) | |
| **ASSETS** | | |
| Current assets | | |
| Cash | $ 1,555,497 | $ 19,810 |
| Prepaid expenses | 157,486 | — |
| Total Current Assets | 1,712,983 | 19,810 |
| | | |
| Deferred offering costs | — | 62,726 |
| Cash and marketable securities held in Trust Account | 250,066,590 | — |
| **TOTAL ASSETS** | $ 251,779,573 | $ 82,536 |
| | | |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities | | |
| Accrued expenses | $ 3,329,929 | $ 1,966 |
| Accrued offering costs | — | 57,726 |
| Total Current Liabilities | 3,329,929 | 59,692 |
| | | |
| Deferred underwriting fee payable | 8,750,000 | — |
| Warrant liabilities | 29,859,848 | |
| **TOTAL LIABILITIES** | 41,939,777 | 59,692 |
| | | |
| **Commitments and Contingencies** | | |
| | | |
| Class A common stock subject to possible redemption, 20,483,979 and none shares at redemption value as of December 31, 2020 | 204,839,790 | — |
| | | |
| **Stockholders' Equity** | | |
| Preferred stock, $0.0001 par value; 1,000,000 shares authorized, none issued and outstanding | — | — |
| Class A common stock, $0.0001 par value; 100,000,000 shares authorized; 5,257,271 and none issued and outstanding (excluding 20,483,979 and none shares subject to possible redemption) as of December 31, 2020 and 2019, respectively | 526 | — |
| Class B common stock, $0.0001 par value; 10,000,000 shares authorized; 6,250,000 and 7,187,500 shares issued and outstanding as of December 31, 2020 and 2019, respectively [1] | 625 | 719 |
| Additional paid-in capital | 34,362,236 | 24,281 |
| Accumulated deficit | (29,363,381) | (2,156) |
| **Total Stockholders' Equity** | 5,000,006 | 22,844 |
| **Total Liabilities and Stockholders' Equity** | $ 251,779,573 | $ 82,536 |

(1)  At December 31, 2019, the shares issued and outstanding includes 937,500 shares of Class B common stock forfeited on October 5, 2020 as a result of the expiration of the underwriter's option to exercise their over-allotment (see Note 6).

**FORUM MERGER III CORPORATION**
**CONSOLIDATED STATEMENTS OF CHANGES IN STOCKHOLDERS' EQUITY**

| | Class A Common Stock | | Class B Common Stock | | Additional Paid-in Capital | Stock Subscription Receivable from Stockholder | Accumulated Deficit | Total Stockholders' Equity |
|---|---|---|---|---|---|---|---|---|
| | Shares | Amount | Shares | Amount | | | | |
| **Balance – June 25, 2019** | — | $ — | — | $ — | $ — | $ — | $ — | $ — |
| Issuance of Class B common stock to Sponsor (1) | — | — | 7,187,500 | 719 | 24,281 | (25,000) | — | — |
| Collection of stock subscription receivable from stockholder | — | — | — | — | — | 25,000 | — | 25,000 |
| Net loss | — | — | — | — | — | — | (2,156) | (2,156) |
| **Balance – December 31, 2019** | — | — | 7,187,500 | 719 | 24,281 | — | (2,156) | 22,844 |
| Sale of 25,000,000 Units, net of underwriting discounts and public warrant liabilities | 25,000,000 | 2,500 | — | — | 231,881,777 | — | — | 231,884,277 |
| Sale of 741,250 Private Placement Units, net of private placement warrant liabilities | 741,250 | 74 | — | — | 7,293,826 | — | — | 7,293,900 |
| Forfeiture of Founder Shares | — | — | (937,500) | (94) | 94 | — | — | — |
| Class A common stock subject to possible redemption | (20,483,979) | (2,048) | — | — | (204,837,742) | — | — | (204,839,790) |
| Net loss | — | — | — | — | — | — | (29,361,225) | (29,361,225) |
| **Balance – December 31, 2020 (As Restated)** | 5,257,271 | $ 526 | 6,250,000 | $ 625 | $ 34,362,236 | $ — | $ (29,363,381) | $ 5,000,006 |

(1) Includes 937,500 shares of Class B common stock forfeited on October 5, 2020 as a result of the expiration of the underwriter's option to exercise their over-allotment (see Note 6).

26.     On May 26, 2021, the Company filed with the SEC its quarterly report for the period ended March 31, 2021 (the "1Q21 Report") signed by Defendants Kiev and Boris.  Attached to the 1Q21 Report were certifications pursuant to SOX signed by Defendants Kiev and Boris attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

27.     The 1Q21 Report contained the following financial statements:

**FORUM MERGER III CORPORATION**
**CONDENSED CONSOLIDATED BALANCE SHEETS**

| | March 31, 2021 | December 31, 2020 |
|---|---|---|
| | (Unaudited) | |
| **ASSETS** | | |
| Current assets | | |
| Cash | $ 1,038,353 | $ 1,555,497 |
| Prepaid expenses | 174,124 | 157,486 |
| Total Current Assets | 1,212,477 | 1,712,983 |
| | | |
| Cash and marketable securities held in Trust Account | 250,004,042 | 250,066,590 |
| **Total Assets** | $ 251,216,519 | $ 251,779,573 |
| | | |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities - Accounts payable and accrued expenses | $ 3,815,030 | $ 3,329,929 |
| Deferred underwriting fee payable | 8,750,000 | 8,750,000 |
| Warrant liabilities | 16,325,028 | 29,859,848 |
| **Total Liabilities** | 28,890,058 | 41,939,777 |
| | | |
| **Commitments and Contingencies** | | |
| | | |
| Class A common stock subject to possible redemption, 21,732,646 and 20,483,979 shares at redemption value as of March 31, 2021 and December 31, 2020, respectively | 217,326,460 | 204,839,790 |
| | | |
| **Stockholders' Equity** | | |
| Preferred stock, $0.0001 par value; 1,000,000 shares authorized; none issued or outstanding | — | — |
| Class A common stock, $0.0001 par value; 100,000,000 shares authorized; 4,008,604 and 5,257,271 issued and outstanding (excluding 21,732,646 and 20,483,979, none shares subject to possible redemption) as of March 31, 2021 and December 31, 2020, respectively | 401 | 526 |
| Class B common stock, $0.0001 par value; 10,000,000 shares authorized; 6,250,000 shares issued and outstanding as of March 31, 2021 and December 31, 2020 | 625 | 625 |
| Additional paid-in capital | 21,875,691 | 34,362,236 |
| Accumulated deficit | (16,876,716) | (29,363,381) |
| **Total Stockholders' Equity** | 5,000,001 | 5,000,006 |
| **Total Liabilities and Stockholders' Equity** | $ 251,216,519 | $ 251,779,573 |

28.     On August 13, 2021, the Company filed with the SEC its quarterly report for the period ended June 30, 2021 (the "2Q21 Report") signed by Defendants Taylor and Li. Attached to the 2Q21 Report were certifications pursuant to SOX signed by Defendants Taylor and Li attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

29.     The 2Q21 Report contained the following financial statements:

**ELECTRIC LAST MILE SOLUTIONS, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS (in thousands, except par value and share data)**

| | Successor | | Predecessor |
|---|---|---|---|
| | June 30, 2021 | December 31, 2020 | December 31, 2020 |
| ASSETS | (Unaudited) | | |
| Current assets: | | | |
| Cash and cash equivalents | $ 171,529 | $ 25,205 | $ — |
| Restricted cash | 45,902 | — | — |
| Prepaid expenses and other current assets | 3,809 | — | 42 |
| Inventories | 824 | — | — |
| Total current assets | 222,064 | 25,205 | 42 |
| Property, plant and equipment, net | 191,966 | — | 131,908 |
| Intangibles and other assets, net | 6,802 | 38 | — |
| TOTAL ASSETS | $ 420,832 | $ 25,243 | $ 131,950 |
| | | | |
| LIABILITIES AND SHAREHOLDERS' EQUITY (DEFICIT) | | | |
| Current liabilities: | | | |
| Accounts payable | $ 7,076 | $ 1,345 | $ 178 |
| Accrued expenses | 2,741 | 5,532 | 1,233 |
| Current portion of land contract and promissory note | 66,658 | — | — |
| Total current liabilities | 76,475 | 6,877 | 1,411 |
| Convertible promissory notes | — | 25,094 | — |
| Land contract and promissory note obligations, net of current portion | 42,716 | — | — |
| Warrant liabilities | 19,447 | — | — |
| Pension benefit obligation | 114 | — | 109 |
| Other long-term liabilities | 443 | — | — |
| Total liabilities | 139,195 | 31,971 | 1,520 |
| COMMITMENTS AND CONTINGENCIES | | | |
| Predecessor parent's net investment | — | — | 130,430 |
| Preferred stock, $0.0001 par value; 100 million shares authorized; none issued or outstanding. | — | — | — |
| Common stock, $0.0001 par value; 1 billion shares authorized; 124,027,012 issued and 118,777,012 outstanding at June 30, 2021 and 82,117,288 issued and outstanding at December 31, 2020. | 12 | 8 | — |
| Additional paid-in capital | 301,467 | 992 | — |
| Accumulated deficit | (19,842) | (7,728) | — |
| Total shareholders' equity (deficit) | 281,637 | (6,728) | 130,430 |
| TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY | $ 420,832 | $ 25,243 | $ 131,950 |

30.     The 2Q21 Report stated the following, in relevant part, regarding Defendant Luo's dealings:

> On June 23, 2021, an entity controlled by Jason Luo sold 6,097 common shares of ELM [Electric Last Mile, In.] back to ELM for the original purchase price of $10.00 per share or a total of $61 thousand, prior to and in connection with the issuance of 5,000,000 shares of the Company's common stock to SERES upon the closing of the Business Combination pursuant to the SERES Asset Purchase Agreement. This transaction was presented in the condensed consolidated statement of changes in shareholders' equity (deficit) retroactively applying the exchange ratio from the Business Combination.

31.     On November 12, 2021, the Company filed with the SEC its quarterly report for the period ended September 30, 2021 (the "3Q21 Report") signed by Defendants Taylor and Song. Attached to the 3Q21 Report were certifications pursuant to SOX signed by Defendants Taylor and Song attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

32.     The 3Q21 Report contained the following financial statements:

**ELECTRIC LAST MILE SOLUTIONS, INC.**
**CONDENSED CONSOLIDATED BALANCE SHEETS (in thousands, except par value and share data)**

| | Successor | | Predecessor |
|---|---|---|---|
| | September 30, 2021 | December 31, 2020 | December 31, 2020 |
| ASSETS | (Unaudited) | | |
| Current assets: | | | |
| Cash and cash equivalents | $ 143,154 | $ 25,205 | $ — |
| Restricted cash | 27,750 | — | — |
| Accounts receivable | 136 | — | — |
| Prepaid expenses and other current assets | 8,503 | — | 42 |
| Inventories | 7,579 | — | — |
| Total current assets | 187,122 | 25,205 | 42 |
| Property, plant and equipment, net | 192,736 | — | 131,908 |
| Intangibles and other assets, net | 6,124 | 38 | — |
| TOTAL ASSETS | $ 385,982 | $ 25,243 | $ 131,950 |
| | | | |
| LIABILITIES AND SHAREHOLDERS' EQUITY (DEFICIT) | | | |
| Current liabilities: | | | |
| Accounts payable | $ 7,757 | $ 1,345 | $ 178 |
| Accrued expenses | 10,386 | 5,532 | 1,233 |
| Current portion of land contract and promissory note | 54,286 | — | — |
| Total current liabilities | 72,429 | 6,877 | 1,411 |
| Convertible promissory notes | — | 25,094 | — |
| Land contract and promissory note obligations, net of current portion | 29,800 | — | — |
| Warrant liabilities | 14,243 | — | — |
| Pension benefit obligation | 90 | — | 109 |
| Other long-term liabilities | 451 | — | — |
| Total liabilities | 117,013 | 31,971 | 1,520 |
| COMMITMENTS AND CONTINGENCIES | | | |
| Predecessor parent's net investment | — | — | 130,430 |
| Preferred stock, $0.0001 par value; 100 million shares authorized; none issued or outstanding. | — | — | — |
| Common stock, $0.0001 par value; 1 billion shares authorized; 124,027,012 issued and 118,777,012 outstanding at September 30, 2021 and 82,117,288 issued and outstanding at December 31, 2020. | 12 | 8 | — |
| Additional paid-in capital | 306,578 | 992 | — |
| Accumulated deficit | (37,621) | (7,728) | — |
| Total shareholders' equity (deficit) | 268,969 | (6,728) | 130,430 |
| TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY | $ 385,982 | $ 25,243 | $ 131,950 |

**ELECTRIC LAST MILE SOLUTIONS, INC.**
CONDENSED CONSOLIDATED BALANCE SHEETS (in thousands, except par value and share data)

| | Successor | | Predecessor |
|---|---|---|---|
| | September 30, 2021 | December 31, 2020 | December 31, 2020 |
| | (Unaudited) | | |
| **ASSETS** | | | |
| Current assets: | | | |
| Cash and cash equivalents | $ 143,154 | $ 25,205 | $ — |
| Restricted cash | 27,750 | — | — |
| Accounts receivable | 136 | — | — |
| Prepaid expenses and other current assets | 8,503 | — | 43 |
| Inventories | 7,579 | — | — |
| Total current assets | 187,122 | 25,205 | 42 |
| Property, plant and equipment, net | 192,736 | — | 131,908 |
| Intangibles and other assets, net | 6,124 | 38 | — |
| TOTAL ASSETS | $ 385,982 | $ 25,243 | $ 131,950 |
| | | | |
| **LIABILITIES AND SHAREHOLDERS' EQUITY (DEFICIT)** | | | |
| Current liabilities: | | | |
| Accounts payable | $ 7,757 | $ 1,345 | $ 178 |
| Accrued expenses | 10,386 | 5,532 | 1,233 |
| Current portion of land contract and promissory note | 54,286 | — | — |
| Total current liabilities | 72,429 | 6,877 | 1,411 |
| Convertible promissory notes | — | 25,094 | — |
| Land contract and promissory note obligations, net of current portion | 29,800 | — | — |
| Warrant liabilities | 14,243 | — | — |
| Pension benefit obligation | 90 | — | 109 |
| Other long-term liabilities | 451 | — | — |
| Total liabilities | 117,013 | 31,971 | 1,520 |
| COMMITMENTS AND CONTINGENCIES | | | |
| Predecessor parent's net investment | — | — | 130,430 |
| Preferred stock; $0.0001 par value; 100 million shares authorized; none issued or outstanding | — | — | — |
| Common stock; $0.0001 par value; 1 billion shares authorized; 124,027,012 issued and 118,777,012 outstanding at September 30, 2021 and 82,117,288 issued and outstanding at December 31, 2020. | 12 | 8 | — |
| Additional paid-in capital | 306,578 | 992 | — |
| Accumulated deficit | (37,621) | (7,728) | — |
| Total shareholders' equity (deficit) | 268,969 | (6,728) | 130,430 |
| TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY | $ 385,982 | $ 25,243 | $ 131,950 |

33.      The statements contained in ¶¶ 20-32 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) ELMS's previously issued financial statements were false and unreliable; (2) ELMS's earlier reported financial statements would need restatement; (3) certain

EMLS executives and/or directors purchased equity in the Company at substantial discounts to market value without obtaining an independent valuation; (4) on November 25, 2021 (Thanksgiving), the Company's Board formed an independent Special Committee to conduct an inquiry into certain sales of equity securities made by and to individuals associated with the Company; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## **THE TRUTH EMERGES**

34.     On February 1, 2022, after trading hours, the Company issued a press release entitled "Electric Last Mile Solutions Announces Leadership Transition and Financial Update" which announced changes to is leadership and that certain of its financial statements needed restatement, stating the following, in relevant part:

> *Transition Follows Resignation of CEO and President James Taylor and Chairman Jason Luo*
>
> *Company Advises Non-Reliance on Financial Statements, Which Will be Restated*
>
> *Electric Last Mile Solutions, Inc. (Nasdaq: ELMS; ELMSW) ("ELMS" or "the Company"), a pioneer of electric and intelligent mobility solutions for commercial vehicle customers, today announced that Shauna McIntyre, a member of the Company's Board of Directors, has been appointed as Interim Chief Executive Officer and President, succeeding James*

*Taylor, who has resigned from his role as Chief Executive Officer and a member of the Board. In addition, Brian Krzanich has been appointed Non-Executive Chairman of the Board, replacing Jason Luo, who has also resigned from his position as Executive Chairman of the Board. The departures follow an investigation conducted by a Special Committee of the Board of Directors (the "Special Committee").*

*On November 25, 2021, the Company's Board formed an independent Special Committee to conduct an inquiry into certain sales of equity securities made by and to individuals associated with the Company, the legal, disclosure and tax consequences of those transactions, and other issues that arose in connection those sales. Based on the Special Committee's investigation, the Company has concluded that in November and December 2020, shortly before the Company's December 10, 2020 announcement of a definitive agreement for a business combination with Forum Merger III Corporation, certain Electric Last Mile Inc. executives purchased equity in the Company at substantial discounts to market value without obtaining an independent valuation. Mr. Taylor purchased equity in these transactions. Mr. Luo participated in these and other transactions and directly or indirectly purchased and sold equity in such transactions.*

*In addition, on January 26, 2022, on the basis of the Special Committee investigation, the Board concluded that the Company's previously issued consolidated financial statements should be restated and, therefore, should no longer be relied upon. The financial statements in question cover the period as of December 31, 2020, the period from August 20, 2020 (inception) through December 31, 2020, the six months ended June 30, and the nine months ended September 30, 2021. In connection with this conclusion, the Company, together with its advisors, is evaluating the accounting and treatment of certain equity issuances to executive officers. Although the Company cannot, at this time, estimate when it will file its restated financial statements for such periods, it is diligently pursuing completion of the restatement, including with respect to an evaluation of the Company's financial statement reserves for tax payments and contingencies.*

(Emphasis added.)

35.    On this news, the Company's share price fell $2.88 per share, or 51%, to close at $2.71 per share on February 2, 2022, the next trading day, on unusually heavy trading volume, damaging investors.

36.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## UNDISCLOSED ADVERSE FACTS

37.    The market for ELMS securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, ELMS securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired ELMS and/or FIIU securities relying upon the integrity of the market price and market information relating to ELMS and have been damaged thereby.

38.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of ELMS securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. These statements and omissions were materially false and/or misleading in that

they failed to disclose material adverse information and/or misrepresented the truth about ELMS's business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause, of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made, or caused to be made a series of materially false and/or misleading statements about ELMS's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

40.     During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading;

knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

41.    The Individual Defendants permitted ELMS to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's securities.

42.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding ELMS, their control over, receipt, and/or modification of ELMS's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning ELMS, participated in the fraudulent scheme alleged herein.

43.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of ELMS and/or FIIU securities by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme deceived the investing public regarding ELMS's business, operations, and management and the intrinsic value of ELMS securities and caused Plaintiff and members of the Class to purchase ELMS and/or FIIU securities at artificially inflated prices.

20

## LOSS CAUSATION/ECONOMIC LOSS

44.     During the Class Period, as detailed herein, ELMS and Individual Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of ELMS securities, and operated as a fraud or deceit on Class Period purchasers of ELMS and/or FIIU securities by misrepresenting the value and prospects for the Company's business, growth prospects, and accounting compliance.  Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of ELMS securities fell precipitously, as the prior artificial inflation came out of the price.  As a result of their purchases of ELMS and/or FIIU securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

45.     To the extent that the Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiff is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972).

46.     Further, Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's securities traded in an efficient market;

(d)     the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e)     Plaintiff and other members of the Class purchased ELMS and/or FIIU securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

47.     At all relevant times, the market for ELMS securities was efficient for the following reasons, among others:

(a)     as a regulated issuer, ELMS filed periodic public reports with the SEC;

(b)     ELMS regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c)    ELMS was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(d)    ELMS securities were actively traded on NASDAQ.

48.    As a result of the foregoing, the market for ELMS securities promptly digested current information regarding ELMS from all publicly available sources and reflected such information in ELMS's price.  Under these circumstances, all purchasers of ELMS securities during the Class Period suffered similar injury through their purchase at artificially inflated prices and the presumption of reliance applies.

## NO SAFE HARBOR

49.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking

statements.  In the alternative, to the extent that the statutory safe harbor is

determined to apply to any forward-looking statements pleaded herein, Defendants

are liable for those false forward-looking statements because at the time each of

those forward-looking statements were made, the speaker had actual knowledge

that the forward-looking statement was materially false or misleading, and/or the

forward-looking statement was authorized or approved by an executive officer of

Concho who knew that the statement was false when made.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

50.    Plaintiff brings this action as a class action pursuant to Federal Rule of

Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other

than defendants who acquired ELMS and/or FIIU securities publicly traded on

NASDAQ during the Class Period, and who were damaged thereby (the "Class").

Excluded from the Class are Defendants, the officers and directors of the

Company, members of the Individual Defendants' immediate families and their

legal representatives, heirs, successors or assigns and any entity in which

Defendants have or had a controlling interest.

51.    The members of the Class are so numerous that joinder of all

members is impracticable. Throughout the Class Period, ELMS securities were

actively traded on NASDAQ. While the exact number of Class members is

unknown to Plaintiff at this time and can be ascertained only through appropriate

discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

52.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

53.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

54.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing

false filings;

- whether the prices of ELMS securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

55.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

58.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they

26

contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

59.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

60.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the

Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

61.     Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other ELMS personnel to members of the investing public, including Plaintiff and the Class..

62.     As a result of the foregoing, the market price of ELMS securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of ELMS securities during the Class Period in purchasing ELMS securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

63.     Had Plaintiff and the other members of the Class been aware that the market price of ELMS securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Company securities at the artificially inflated prices that they did, or at all.

64.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

65.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of ELMS securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

66.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

68.     As officers of a public business, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public

statements issued by the Company which had become materially false or misleading.

69.    Because of their positions of control and authority as senior executives and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

70.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under

Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

     (b)    awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

     (c)    awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

     (d)    awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 4, 2022          **Labaton Sucharow LLP**

             /s/ Joseph N. Cotilletta (047092011)
             Joseph N. Cotilletta
             Francis P. McConville
             David J. Schwartz
             140 Broadway
             New York, NY 10005
             Tel: (212) 907-0700
             Fax: (212) 818-0477
             jcotilletta@labaton.com
             fmcconville@labaton.com
             dschwartz@labaton.com

             *Counsel for Plaintiff*

             **The Schall Law Firm**
             Brian Schall
             1880 Century Park East, Suite 404

Los Angeles, California 90067
Tel: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Plaintiff*

## **CERTIFICATION**

I, Pierre Fontaine, hereby certify as follows:

1.      I have reviewed a complaint filed against Electric Last Mile Solutions, Inc. f/k/a Forum Merger III Corp. ("ELMS") alleging violations of the federal securities laws, and authorize the filing of this pleading;

2.      I did not purchase securities of ELMS at the direction of counsel, or in order to participate in any private action under the federal securities laws;

3.      I am willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary.  I fully understand the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class;

4.      My transactions in ELMS securities during the Class Period are reflected in Exhibit A, attached hereto;

5.      I have not sought to serve as a lead plaintiff and/or representative party in any class action under the federal securities laws filed during the last three years;

6.      Beyond my pro rata share of any recovery, I will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is

true and correct this 3/31/2022 day of , 2022.

DocuSigned by:

*Pierre Fontaine*

74B050BAF7D74E2...

Pierre Fontaine

2

**EXHIBIT A**

**TRANSACTIONS IN ELECTRIC LAST MILE SOLUTIONS, INC.**

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Purchase | 1/4/2021 | 10,000 | $14.35 | ($143,500.00) |